DUFFY, J, concurs.
MILLER, J, not participating.

**MILLER, Estate of, In re.**

Probate Court, Franklin County.

No. 128876.　Announced July 18, 1950.

Vorys, Sater, Seymour & Pease, Columbus, for executors.
Key & Butler, Columbus, for widow.

## OPINION

By McCLELLAND, J.

This is an action for a Declaratory Judgment filed by the Executors of the Estate of Frederick A. Miller, who died testate on May 6, 1948. The widow of the decedent elected to take under the statute of descent

and distribution rather than under his will. As the decedent left two children, the widow is entitled to one-third of the net estate.

The sole question raised by the petition and the answer of the widow may be stated as follows:

"Is the widow entitled on distribution of the estate to one-third of the net estate undiminished by the federal estate tax, so that her one-third share will be free of the burden of any part of the federal estate tax, by virtue of the recent amendment to Section 812 of Title 26, United States Code Annotated, which became effective April 2, 1948, and which amendment is known as the "Marital deduction"?

If the answer to the above question is in the negative the widow's share on distribution will be diminished by her proportionate share of the burden of the federal estate tax.

Counsel for the widow vehemently urge in their exhaustive brief that the question should be answered in the affirmative, while counsel for the executors claim that the question should be answered in the negative.

Apparently this is another case of first impression which this court is called upon to decide, dealing with our Ohio statutes of descent and distribution. Neither counsel nor the court have found any Ohio case dealing with the question raised in this estate, which estate amounts to over $2,000,000.00.

In the consideration of this question the nature of the federal estate tax must be borne in mind. The nature of the tax has been commented on innumerable times by both the Federal and State Courts. A good statement by our Supreme Court of the nature of the tax may be found in the case of **Y. M. C. A. v. Davis, 106 Oh St 366 (1922)**, to wit:

"The federal statute involved denominates the federal legal charge as an 'estate tax' and that charge obviously becomes fixed immediately upon the death of a person having an estate subject to such tax. All the provisions of the act are consistent with this denomination.

"The language of the act, Section 401 (40 Stat, at L., 1096), clearly shows that the tax 'is hereby imposed upon the transfer of the net estate,' after all legal charges have been deducted, that is, charges imposed by law, together with such additional charges as provisions of the statute itself include in the ascertainment of the net estate.

"In short, it was the plain purpose to enact a revenue raiser, which should impose a charge or excise upon the decedent's right to direct or control the transfer of his estate, either under his will, or under the law.

"It was therefore not an inheritance tax. It had no relation whatsoever, so far as herein involved, to any charge upon any devise or legacy, or the right of any person, natural or artificial, to take, hold or receive any portion of an estate.

"In this view of the case, the estate must be considered as a whole, without regard to the nature, character, or amount of the legacies or bequests."

The nature of the tax has not changed since the above decision of our Supreme Court was rendered in 1922, and the amendment providing for the marital deduction did not change the nature of the tax. In

enacting the marital deduction Congress merely added to the list of subsections to said section 812 one more subsection, which is designated subsection (e).

Section 810 imposes the tax on "the value of the net estate (determined as provided in section 812)." Section 812 carries the headnote "Net estate" and begins as follows:

"Section 812. For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

"(a) Exemption. An exemption of $100,000.00 * * *"

Then follow four other subsections to the statute, designated as follows:

"(b) Expenses, losses, indebtedness, and taxes.

"(c) Property previously taxed.

"(d) Transfers for public, charitable, and religious uses.

"(e) Bequests, etc., to surviving spouse.

"(1) Allowance of marital deduction."

Nowhere in the whole Section 812, as amended April 2, 1948, will be found any indication at all that Congress intended, in providing for the marital deduction, to exempt the surviving spouse up to the amount of the marital deduction, from sharing in the burden of the estate tax, as is contended by counsel for the widow. In fact, the structure of the amendment definitely shows that the original nature of the tax is preserved, and that the marital deduction was intended merely as an additional deduction from the gross estate and not as an exemption in favor of the surviving spouse alone. The amendment classifies the marital deduction along with the other four deductions listed in the statute.

The amendment itself even recognizes the fact that the surviving spouse would share the burden of the tax on the value of the interest in property passing to her for which the marital deduction is allowed, because subsection (e) (1) (E) provides in part, as follows:

"(E) Valuation of interest passing to surviving spouse. In determining for the purposes of subparagraph (A) (providing for marital deduction) the value of the interest in property passing to the surviving spouse for which a deduction is allowed by this subsection—

"(i) there shall be taken into account the effect which a tax imposed by this chapter, or any estate, succession, legacy, or inheritance tax, has upon the net value to the surviving spouse of such interest; and

"i.i.) where such interest or property is incumbered * * *."

The words, "a tax imposed by this chapter," in the above quoted subsection, refer to the tax imposed by Chapter 3, which is the chapter on "Estate Tax." If Congress intended to exempt the surviving spouse, up to the amount of the marital deduction, from sharing in the burden of the estate tax, the above quoted subsection clearly controverts such intention. Furthermore, subparagraph (A), mentioned in the above quoted section, instead of exempting the share of the surviving spouse from the tax, specifically requires, before the marital deduction can be claimed, that the property passing to the surviving spouse must be in-

cluded in the gross estate for the purpose of determining the tax. Subparagraph (A) reads as follows:

"For the purpose of the tax the value of the net estate shall be determined, * * * by deducting from the value of the gross estate—

"(e) (1) (A) An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate."

Reverting to **Y. M. C. A. v. Davis, 106 Oh St 366,** the case was affirmed by the United States Supreme Court, in 264 U. S. 47. The syllabi of that case reads as follows:

"1. The Estate Tax imposed by the Revenue Act of 1918, C. 18, 40 Stat. 1096, is not a succession tax upon the benefits received by devisees and legatees, but an excise or death duty upon the transfer of the decedent's estate. P. 49.

"2. In providing that bequests to religious and charitable corporations shall be deducted in determining the value of the net estate upon which the tax is imposed, No. 403 (3), the act does not undertake to exempt the recipients of such charitable gifts from the burden of the tax if placed upon them by the will. P. 50.

"3. Hence, where the charitable gifts are residuary, and are duly taken into account in ascertaining the net taxable estate and the amount of the tax, the act offers no obstacle to charging the tax, with other costs and expenses, against the gross estate and satisfying specific devises and bequests in full before the charitable gifts are satisfied. Id.

"**106 Oh St 366,** affirmed."

While this case dealt with a charitable deduction before the marital deduction was introduced in the statute, the following quotation from the opinion in that case written by Chief Justice Taft, might be applied with equal force to the marital deduction. The quotation is as follows:

"Congress was thus looking at the subject from the standpoint of the testator and not from the immediate point of view of the beneficiaries. It was intending to favor gifts for altruistic objects, not by specific exemption of those gifts but by encouraging testators to make such gifts. Congress was in reality dealing with the testator before his death. It said to him 'if you will make such gifts, we'll reduce your death duties and measure them not by your whole estate but by that amount, less what you give.' In No. 408 it is declared to be the intent and purpose of Congress that as far as it is practicable and unless otherwise directed by the testator, the tax is to be paid out of the estate before distribution."

"There is nothing in subdivision (3) of No. 403 which exempts the recipients of altruistic gifts from taxation; it only requires a deduction of them in calculating the amount of the estate which is to measure the tax. It exempts the estate from a tax on what is thus deducted just as subdivision (4) exempts in terms the estate from taxation on its first $50,000; but this does not operate to exempt any legatee who may be entitled to the first $50,000 in the distribution, from deduction to contribute to the tax ultimately imposed, if by the law of the State, such should be its incidence."

We come now to the question of how the share of the widow in this case is to be determined under the Ohio law. The widow elected to take under the statute of descent and distribution by virtue of §10504-55 GC, which section provides that

"In the event of election to take under the statute of descent and distribution, such spouse shall take not to exceed one-half of the net estate."

But under §10503-4 GC, the statute of descent and distribution, the widow is limited to a one-third share. So, instead of the widow taking one-half of the net estate she takes one-third of the net estate, the decedent having left two children. Under our statutes governing administration and distribution of estates, the net estate for distribution is not determined until all claims and charges against the estate are satisfied; these include the costs and expenses of administration, funeral bill, statutory allowances to the surviving spouse, debts and taxes, including estate taxes. As to estate taxes being a charge against the estate see the case of **Tax Commission v. Lamprecht, 107 Oh St 535,** cited with approval **In re Estate of Gatch, 153 Oh St 491.**

That the estate tax is to be deducted from the estate before distribution is plainly indicated by the federal estate tax law itself. Section 822 provides that the executor shall pay the tax, and subsection (b) of section 826 contains the following language, to-wit:

"It being the purpose and intent of this subchapter (Subchapter A of Chapter 3, Estate Tax), that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution." (Parenthesis ours.)

Counsel for the widow relies strongly on the case of In re Peters Will, 88 N. Y. Sup (2d) 142, decided by the Surrogate Court of Suffolk County and affirmed June 13, 1949, in a memorandum opinion by the New York Supreme Court, Appellate Division, 89 N. Y. Sup. (2d) 651, which is the only reported case, dealing with this marital deduction question, that counsel have been able to find. That case, however, turned upon a construction of a New York Statute of which Ohio has no counterpart. The statute is section 124, Decedent Estate Law, which carries the following headnote:

"Section 124. Apportionment of federal and estate taxes; executor or administrator to deduct taxes from distributive shares."

The section provides that a proration of the (State and Federal) taxes shall be made in the proportion that the value of the benefits of each person bears to the total value of the benefits received by all the persons interested in the estate, with the following exception:

"except that in making such proration allowances shall be made for any exemptions granted by the act imposing the tax and for any deduction allowed by such act for the purpose of arriving at the value of the net estate:"

Accordingly, under this section the Surrogate Court ruled as follows:

"Inasmuch as the will does not otherwise direct, all estate taxes will have to be prorated among the persons interested in the estate in accordance with the provisions of Section 124. Decedent's Estate Law.

Petitioner's portion (widow's portion) of the estate tax on her intestate share will be in the proportion that the value thereof bears to the total value of said gross estate (reduced by funeral and administration expenses and debts of the decedent) with proper allowances for her exemption of $20,000.00 with respect to estate taxes payable to the State of New York and for her marital deduction with respect to the Federal Government."   (Parenthesis ours.)

The Surrogate Court interpreted the marital deduction as a benefit conferred upon the widow as an exemption or deduction against her share provided for in Section 124, Decedent's Estate Law.   This interpretation of the New York statute by the Surrogate must be born in mind when in his opinion he makes the following broad statement concerning the marital deduction:

"Its purpose is to allow a surviving spouse to take a certain portion of the estate free of Federal Estate taxes."

Enterprising counsel for the widow have also cited us to an unreported case decided by Judge Klein of the Orphans Court of Philadelphia County, Pa., being the case of Estate of Marriott C. Morris, No. 40 of 1949, decided February 14, 1950.   The decision was rendered on the audit of the account in that estate in which no argument was advanced against the ruling of the court.   As in the New York Case, the question raised by Judge Klein involved an interpretation of a Pennsylvania statute, the wording of which is almost identical with that of the New York statute, in connection with the marital deduction.   The Court, after calling attention to the fact that the Internal Revenue Code makes no provision for the apportionment of the federal estate tax says that the ultimate impact of the tax is determined by the law of the state and that, therefore, he must look to the Pennsylvania Tax Apportionment Act for the answer.   Judge Klein approves and follows the Peters Case, Supra, in that Court's construction of the New York Apportionment Statute and quotes with approval that court's statement that the marital deduction is substantially in the same category as the charitable deduction allowed by Section 812 (d) U. S. C. A.   The Court then calls attention to one of its own cases involving the charitable deduction which was affirmed by the Supreme Court, being the case of Harvey Estate, 350 Pa. 53 (1944) and quotes from its own opinion in that case a passage which the Supreme Court quoted with approval, to-wit:

"In determining the purpose of this act (Tax Apportionment Act), we must refer also to the Internal Revenue Act which it was enacted to execute and to whose terms it refers and partly adopts.   Given this setting, it is unquestionable that the purpose of the Pennsylvania Act is to equitably apportion the burden of the tax.   Therefore, in our opinion the application of the equitable doctrine of contribution demands that the tax be borne commensurately by those whose gifts contribute to the tax burden and conversely that there be eliminated from such burden all whose legacies do not in any way create or add to the tax * * * The act lacks an express direction to 'thrust' any of the tax upon the charities and, therefore, we cannot conceive that the Pennsylvania legislature intended to violate the spirit of the Federal Act, whose pro-

visions allowing the deductions of the charitable legacies are practically written into the Pennsylvania Act." (Parenthesis ours.)

There we have the reasoning of that court in its interpretation of the meaning of that State's Tax Apportionment Act, as applied to the charitable deduction, approved by the Supreme Court. Judge Klein adopts the same reasoning in the Morris case, Supra, with reference to the marital deduction.

As Ohio does not have any Tax Apportionment Act, the New York and Pennsylvania cases cannot be considered as authoritative upon the question before us.

It is, therefore, our opinion that the marital deduction must be deducted from the gross estate, the same as the other deductions authorized by Section 812 U. S. C. A., before the federal estate tax may be determined, and that, after the tax is paid, the widow is entitled on distribution to one-third of the net balance of the estate. This means that the widow must bear her proportionate share of the burden of the whole of the estate tax, and that the question poised at the beginning of this opinion must be answered in the negative.